MEMORANDUM OF DECISION ON PLAINTIFF’S REQUEST FOR LEAVE TO PRESENT ADDITIONAL EVIDENCE
GUERNSEY, C.J.
Pursuant to MTC § 3-224(h), the Plaintiff has filed an Application for Leave to Present Additional Evidence in his appeal from the revocation of his gaming license. The requisite analysis of whether such evidence meets the statutory standards[1] must commence with an examination of the unusual fact situation presented by the initial proceedings, the agreement apparently reached between the Plaintiff and the Attorney for the Commission[2] prior to the hearing before the Agency, and the somewhat surprising testimony then presented by the Commission before the Hearing Officer.
The Plaintiff was employed by the Mohegan Sun (Mohegan Tribal Gaming Authority) as a time shift manager,[3] and was accused of violating the policy of his department concerning the release of confidential information concerning a patron.[4] Prior to the hearing, the attorney for the Commission advised the Hearing Officer that the matter involved the release of information concerning one Christine Hicks, a Casino patron, to the Plaintiffs counterpart at Foxwoods Casino.[5] The Attorney further advised the Hearing Officer that:
... Mr. Clute realizes that uh, he has made some poor choices uh, and decided that he would be, it would be more favorable if he spoke from his head and heart and waving [sic] the right of testimony and agreeing that he would uh, advise the court as to the conduct in question.[6]
Counsel for the Commission properly emphasized, and the Plaintiff agreed, that the Plaintiff had been advised that he had the right to an attorney. The Commission then presented three exhibits, including the Confidentiality Policy[7] which bore Mr. *473 Clute’s signature, indicating his receipt of the same.
The Commission then produced as a witness Mr. Paul Athey, the Executive Host Manager, who described his duties and those of the Plaintiff, and confirmed that the Plaintiff was aware of the policies and procedures concerning confidential information and proprietary information. Mr. Athey testified to what, at first glance, appears to be a relaxation of the Confidentiality Policy in certain circumstances:
JO: And just so that the court is aware, what is the policy concerning the release of proprietary or confidential information?
PA: The policy is that we have to have, we can’t give any information out of an account without authorization of the patron. So in other words the third party can’t request information about a customer directly from us. So it’s not exclusive information and the exception to giving that information is if a customer comes to us and says you know, I want to go to Vegas or wherever and can you help me get a room? You get a better rate and as a host we can do that because we have the customer’s authorization because we are helping our customer.
JO: The customer standing in front of you?
PA: Yeah, he’s standing in front of us or on the phone, we verify that we are speaking with the customer in some way.
Thereafter, the Plaintiff described what transpired between him and his counterpart at Foxwoods on August 17th:
JQ: All right. Correct me if I’m wrong, I believe that the date was August 17th, I did receive a call from John Sanders and I was actually in the office checking my email and he called me and told me that he was with a patron uh, Christy Hicks and they were having dinner and uh, 1 do remember the first question that he asked me was information that you know, she was claiming to get, I think non-gaming limo’s to and from the casino every time uh, she went so yeah, he was asking me questions about that and yes, I did.[8]
The Plaintiff went on to confirm that Ms. Hicks did receive non-gaming limo’s. The Commission presented no evidence as to what information the Plaintiff revealed, relying on the testimony of the Plaintiff, nor was any evidence presented as to whether the patron authorized the disclosure. The evidence which the Plaintiff seeks to introduce before the Agency as described in Plaintiffs brief falls into the following categories:
1. Additional evidence and testimony from Mr. Athey and Mr. Clute relative to the practice in the department to communicate with Hosts at other Casinos regarding players;
A subsequent memorandum circulated in the department concerning communication with other Hosts at other Casinos;
1. Testimony as to the nature of the information provided by the Plaintiff', in particular whether it was specific information concerning the patron’s Player’s Club account or general information relative to the type of “comp” provided;
*474 2. Testimony regarding the consent, of the patron, anticipated to come from Ms. Hicks.
3. Testimony regarding whether management had condoned the practice for which the Plaintiffs license was revoked.
That this evidence is material is beyond dispute:
It is axiomatic that “[ejvidence is admissible only to prove material facts, that is to say, those facts directly in issue or those probative of matters in issue; evidence offered to prove other facts is ‘immaterial.’ ” C. Tait, Connecticut Evidence (3d Ed.2001) § 4.1.3, p. 200, citing Adams v. Way, 32 Conn. 160, 167-69 (1864).
Salmon v. Department of Public Health and Addiction Services, 259 Conn. 288, 316, 788 A.2d 1199 (2002). The Plaintiffs gaming license has been revoked on grounds that he violated the Confidentiality Policy and the testimony of Mr. Paul Athey, the Commission’s only witness, could easily be interpreted that, had the Plaintiff spoken directly to Ms. Hicks, rather than relaying information about non-gaming “comps” through Mr. Sanders, the same would have comported with department policy.
As to whether there were good reasons for failure to present this evidence before the Agency, the Plaintiff has represented that he was advised that if he “spoke from the heart” and apologized that no further action would be taken (the actual statement to the Hearing Officer was “spoke from this head and heart and waving [sic] the right of testimony and agreeing that he would advise the court as to the conduct in question”[9]). This is certainly consistent with what took place, where the only evidence of any misconduct came from the Plaintiff himself. Although a close call, this state of facts and the agreement not to present testimony, coupled with the testimony from Mr. Athey that in all probability was unexpected, establishes good cause for failure to present the additional evidence before the Agency.
Plaintiffs Motion for Leave to Present Additional Evidence is granted, and the matter is remanded to the Hearing Officer pursuant to MTC § 3—224(h). As for the conditions under which such evidence may be taken, in view of the agreement under which the earlier hearing proceeded, the Court recognizes that the Commission would be prejudiced if only the Plaintiff were to be allowed to present additional evidence. Therefore, further proceedings before the Agency shall be stayed for a period of fourteen days from the date hereof[10], during which time the Commission may move for leave to present additional evidence. This Court will retain jurisdiction as set forth in G.D.C.P. § 41(b).

. The standard for allowing such additional evidence to be presented before the Agency is set forth in MTC § 3-224(h):
If, before the date set for hearing on the merits of an appeal, application is made to the Court for leave to present additional evidence, and it is shown to the satisfaction of the Court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the Agency (a reason that a parly was pro se during the Agency action shall not be found to be good reason), the Court may order that the additional evidence be taken before the Agency upon conditions determined by the Court. ...

. To avoid confusion the Defendant in the instant appeal will be referred to as the Commission with respect, to the proceedings before the Hearing Officer.

. The Defendant presented the testimony of Paul Athey, the Executive Host Manager for Mohegan Sun, who described the Plaintiff as "one of our valuable time shift managers.” Transcript at 3.

. Commission Exhibit # 3.

. Transcript at 1.

. Transcript at 2.

. This policy, Commission Exhibit 3, consists of four paragraphs, dealing with: 1) personal information regarding staff (salaries, discipline, etc.); 2) requests for information from the Player's Club or other records by an outside agency or the press; 3) information about a patron’s account, which should be released only to the patron himself/herself; and 4) the business affairs of the Mohegan *473 Sun, which are not to be discussed “with anyone outside of our organization except as required in the normal course of business.” This latter category includes marketing programs, pricing and other information which is considered a trade secret.

. Transcript, at 5.

. Statement of Attorney Jack O'Brien, Commission Counsel, Transcript at 2.

. Should Commission Counsel find it necessary, a reasonable extension of this period will be allowed.