*476 MEMORANDUM OF DECISION
GUERNSEY, Chief Judge.
Oral argument was conducted and briefs submitted pursuant to Defendant’s Motion for Rectification as to Plaintiffs Motion for Leave to Present Additional Evidence. The background of this motion and the administrative agency’s final decision which is the subject of this appeal are set forth in an earlier opinion of this Court[1] and will not be repeated.
There is no dispute as to the materiality of the evidence which Plaintiff seeks to submit,[2] rather, the sole issue now before the Court is whether the second requirement for the submission of additional evidence, “that there were good reasons for failure to present it in the proceeding before the Agency,” has been satisfied.[3] MTC § 3-224(h). As the Defendant emphasizes, the ordinance under which this appeal is filed specifically provides “a reason that a party was pro se during the Agency action shall not be found to be good reason.” MTC § 3-224(h).
The Plaintiff has claimed, and the Transcript would seem to corroborate, that he was advised to apologize and that if he did no further action would be taken:
7. After I received notice of the show cause hearing, my license had not been suspended and I continued working. I was advised by supervisors not to worry about the hearing and to go in and apologize and that it would be okay. I was under the impression that if I “spoke from the heart” and simply apologized no further action would be taken. Had I been aware that this was not the case, I would have reconsidered obtaining legal counsel.
Affidavit of Jason Clute in Support of Application for Leave to Present Additional Evidence, Paragraph 7. The Transcript reveals that this is precisely what took place, and that no evidence of what the Plaintiff had done, other than a somewhat rambling apology by the Plaintiff, was presented. The Commission presented no evidence of wrongdoing by the Plaintiff, and the Commission’s only witness was the Executive Host Manager, Mr. Paul Athey, whose testimony, set forth in this Court’s earlier opinion, is impossible to reconcile with the Confidentiality Policy[4] introduced as Com *477 mission Exhibit 3.[5] At oral argument Commission Counsel stated that, whereas giving the same information to the Mohegan patron over the telephone might be permissible with proper identification, the failure of the Plaintiff to insist on proof that the Foxwoods host was acting at the direction of the patron was adequate grounds for the revocation of Plaintiffs gaming license. In the Commission Counsel’s view, an offense that justifies firing also justifies the revocation of a gaming license.[6]
As the Commission argues, had the Plaintiff received the ineffective assistance of counsel or if the evidence was newly discovered, good cause for the failure to present it could be found. Salmon v. Department of Public Health and Addiction Services, 259 Conn. 288, 324, 788 A.2d 1199 (2002). The Plaintiffs response is that he was affirmatively advised just to go and apologize, and that the testimony of Mr. Athey was unknown and a surprise.
Commission Counsel stressed that he was not the party to advise the Plaintiff to forego the presentation of evidence and an attorney, a position that this Court accepts without hesitation.[7] By the same token, no argument is taken with Plaintiffs position that he did as advised by his supervisors. In short, Plaintiff entered into an agreement with Commission Counsel on the advice of his supervisors and their representations made to him. As part of this Agreement, the Plaintiff waived “the right of testimony” and agreed to speak to the Healing Officer and apologize.
*478 At argument, Commission Counsel challenged the Plaintiffs claims that he acted on the advice of his supervisors by observing, correctly, that the supervisors are not named in the affidavit, and that they were certainly not acting as his attorneys, thus making Salmon inapplicable. However, no evidence was submitted to refute the Plaintiffs claim, by affidavit or otherwise, and it is clear that the Plaintiffs actions at the hearing were consistent with such advice and representations, as were the actions of the Commission in allowing the only evidence of wrongdoing to be the Plaintiffs apology. The Court finds the claims of the Plaintiff as to his reasons for failure to present the evidence to be credible.
At Issue, then, is whether the same, together with arguably surprising testimony from Mr. Athey, constitutes “good reasons” for the failure to present evidence whose materiality is unquestioned, especially in the context of a “hearing” that may well set a record for the paucity of information presented on both sides.[8]
As Judge Eagan has observed:
[T]he exercise of governmental authority in revoking a license mandates a hearing that complies with procedural due process, which is “inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situations demands.”
Culley v. Office of Director of Regulation, 3 G.D.R. 28, 32, 6 Am. Tribal Law 605, 2006 WL 6181098 (2006) (citations omitted). The Constitution of the Mohegan Tribe of Indians of Connecticut explicitly recognizes the due process protections of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301 et seq.[9]
In the instant situation, where the Plaintiffs gaming license had not been suspended prior to the hearing, where he had been affirmatively advised by supervisors not to contest anything but merely to apologize and no further action would be taken, where both sides agree not to present evidence beyond an ambiguous apology and the only actual testimony is from a Commission witness that was probably not to be expected, the Court finds the foregoing establish “good reasons” for Plaintiffs failure to present the proffered evidence before the Hearing Officer. When, to this situation is added what amounts to an agreement not to present any evidence to the Hearing Officer by anyone, the observations of Judge Landau become most appropriate:
Common sense and federal case lawT indicate that where an agency record is incomplete for one reason or another, a remand to the agency to take additional evidence is the only method by which the court can assure meaningful judicial review.
*479 Gervasoni v. McGrath, 36 Conn.Supp. 297, 301, 418 A.2d 952 (1980).
The decision of this Court with respect to Plaintiffs Motion for Leave to Present Additional Evidence, issued July 23, 2008, is hereby reinstated in its entirety.

. Memorandum of Decision on Plaintiffs Request for Leave to Present Additional Evidence, July 23, 2008.

. This was admitted by Commission counsel during the hearing on this motion.

. As the Connecticut Supreme Court has observed:
First, although it may be true that, in a trial, the court is vested with broad discretion regarding the admissibility of evidence, that discretion does not factor into its role as an appellate body acting within the framework of § 4-183(h). When a party moves for a remand in order to present additional evidence before an administrative agency pursuant to the statute, the trial court's role is limited to determining whether {1) the evidence is material, and (2) there existed good reasons for not presenting such evidence before the administrative agency originally. The trial court is not asked to decide whether the evidence would be admissible in the normal course of a judicial proceeding, nor is it required to determine whether the evidence would be admissible before itself in the course of the administrative appeal. Indeed, the trial court is not even asked to decide whether the evidence will be admissible before the agency upon remand; such analysis becomes subsumed within the court's finding that the additional evidence is material, given the more relaxed standard for admissibility contained in the UAPA.
Salmon v. Department of Public Health and Addiction Services, 259 Conn. 288, 318, 788 A.2d 1199 (2002).

. The testimony of Mr. Athey was as follows:
*477 PA: The policy is that we have to have, we can't give any information out of an account without authorization of the patron. So in other words the third party can’t request information about a customer directly from us. So it's not exclusive information and the exception to giving that information is if a customer comes to us and says you know', I want to go to Vegas or wherever and can you help me get a room? You get a better rate and as a host we can do that because we have the customer’s authorization because we are helping our customer.
Transcript at 4. This is impermissible under the Confidentiality Policy, which states:
Please do not release any information about a patron's account to anyone other than the patron himself/herself.
Commission Exhibit # 3. If the Foxwoods host were acting at the direction of the patron, it seems reasonable to infer that it was for the same purpose, obtaining a benefit from another casino, that Mr. Athey's testimony would seem to allow'.

.Whether the record supports the Hearing Officer's finding that “[qjuestions regarding whether or not the Mohegan Sun patron rates limousine service and what the average theoretical win would be were provided to the Foxwoods host by the Appellant," Finding No. 4, is not at all clear given that the Commission deliberately introduced no evidence of wrongdoing, and the admission by Appellant was that "I don't remember exact specifics uh, but if he did ask me for like a six lunch [sic] theoretical, uh, I would have given him that information and other information regarding her play.” Transcript at 6.

. This is hard to reconcile with the status of persons such as the Plaintiff as at-will employees and the requirement of the Tribal— State Compact governing the right to judicial review of license decisions. Tribal—State Gaming Compact, § 5(i), There is no right to judicial review' of MTGA employment decisions, Ager v. Office of the Director or Regulation, 1 G.D.R. 1, 4, 1 Am. Tribal Law 380, 1997 WL 34678574 (1997), other than as set forth in the Discriminatory Employment Practices Ordinance, MTC § 4-21 et seq. and as may exist under the Indian Civil Rights Act, 25 U.S.C. § 1301, et seq., and the Constitution of the Mohegan Tribe of Indians of Connecticut, Article XIII, Section 4; Article XI, Sections 1-2. Fortunately, the ruling on the instant motion does not require the resolution of this issue.

. Commission Counsel's reading of the relevant portion of this Court’s earlier opinion to the opposite effect is certainly not what the Court intended.

. The actions of the Commission are certainly consistent with the Plaintiffs understanding of the situation, with the Commission deciding to forego the presentation of evidence:
[Commission Counsel]: .,. Now, before going much further I did advise Mr. Clute that he had the right to have an attorney present uh, that I had witnesses and that I could present to give their side of the evidence that was gathered by Investigator Ted Kidd ...
Transcript at 1-2.

. "The Mohegan Tribe, in exercising its powers of self-government, shall make no law inconsistent with the Indian Civil Rights Act of 1968 (25 U.S.C. 1301-1303; 82 Stat. 77), which requires that The Tribe not: ... (h) deny to any person within its jurisdiction the equal protection of its law or deprive any person of liberty or property without the [sic] process of law." Constitution of the Mohegan Tribe of Indians of Connecticut, Article XI, Section 1.