MEMORANDUM OF DECISION

GUERNSEY, C.J.
The history of this Appeal taken from the revocation of Plaintiffs gaming license is set forth in this Court’s Memorandum of Decision on Plaintiffs Request for Leave to Present Additional Evidence, 3 G.D.R. 122, 7 Am. Tribal Law 471 (2008), reinstated after hearing, 3 G.D.R. 139, 7 Am. Tribal Law 474 (2008), and will not be repeated here, except to note that the decision to revoke the Plaintiffs gaming license followed a hearing in which the only evidence as to what the Plaintiff did wrong came from a rambling apology from the Plaintiff himself,[1] much of it in the subjunctive,[2] relative to the Plaintiffs revealing information concerning a patron of Mohegan Sun to his counterpart at Fox-woods. The Commission[3] presented no evidence as to whether or not any disclosure of information was in fact authorized by the patron, or whether the interests of the MTGA or the Mohegan Sun, or the *149 effective regulation of gaming, were compromised by what was revealed. Unlike virtually every other appeal from the action of the Director of Regulation revoking a gaming license, there is no evidence in the record as to how this situation came to the attention of the Director in the first place.
Against this background, the Plaintiff filed an Application for Leave to Present Additional Evidence, which was granted, with the express provision that the remand was stayed for fourteen days so that the Commission, in fairness, would have the opportunity to file its own motion for leave to present additional evidence.[4] No such application was filed by the Commission, and the remand was conducted to receive the additional evidence set forth in Plaintiffs application.
At the hearing following remand, virtually the only significant addition to the evidence presented at the original hearing[5] came from the Plaintiffs testimony, over objection, that he recognized the voice of the patron talking in the background during the Foxwood Host’s request for information:
JC: Okay, uh, I had just come into the office, I believe I was checking my voice-mail, uh, and I got a call from John Sanders from Foxwoods uh, that said that he was with Christine Hicks. Uh, I could clearly, I knew that she was’in the background and I could hear her, you know she must have been standing right obviously next to him. Uh, you know she was you know saying hi and whatever and you know telling (inaudible) all the time and that’s when I said, uh, I don’t know about all the time but maybe quite frequently, I don’t remember, I don’t recall him asking anything specific about play but generally the guidelines that we would release to another host, un, I would have released information had he needed additional information but I don’t recall anything specific uh, information that he requested anything other than limos.
Transcript at 6.
Following the hearing on remand, the Defendant’s Hearing Officer took an extremely narrow view of the purpose of the remand, finding in each of the five categories of additional evidence that the Plaintiff sought to introduce that, either the “Plaintiff failed to have the witness appear or take steps necessary to issuing process to compel his attendance” or, in the case of the testimony of the Plaintiff, that “insufficient evidence has been presented on this issue to overturn or assist in overturning the original Decision from the Gaming Commission.” As a result, the Hearing Officer concluded:
I find there is insufficient additional evidence to warrant overturning the origi *150 nal Notice of Decision. The higher court was specifically concerned about the Plaintiffs ability to present evidence at the first hearing and by the Order dated October 1, 2008 outlined the evidence that should be considered in remand. The evidence presented provided no significant additional value and in several cases no evidence was presented al all to address specific issues.
As for the Plaintiffs testimony concerning his recognition of the voice of the patron, who said “hi” during the telephone call from the Foxwoods host, the decision of the Hearing Officer is completely silent, so it cannot be determined whether this was found not to be credible or that it made no difference.[6]
At the outset, it must, be noted that it is unclear whether the Hearing Officer, in determining whether the additional evidence warranted “overturning” the original Notice of Decision, followed the standard set forth in MTC § 3—224(h):
The Agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications [,] new findings, or decisions with the reviewing Court.
The effect of the granting of a motion to offer additional evidence pursuant to Conn. Gen.Stat. § 4—183(h), virtually identical to MTC § 3—224(h) in all relevant aspects, has been described as follows:
When a party moves to offer additional evidence before the agency pursuant to § 4—183(h), it is not requesting a new hearing, but rather an opportunity to supplement the record with evidence that originally was unavailable. Furthermore, a court order granting such a motion does not vitiate the department’s original decision, but instead permits the department to consider new evidence and to modify its decision as necessary. Thus, a remand under § 4—183(h) does not offer the parties an opportunity to relitigate the ease ab initio, but rather represents a continuation of the original agency proceeding.
Salmon v. Department of Public Health and Addiction Services, 259 Conn. 288, 319, 788 A.2d 1199 (2002). That the Hearing Officer may, in fact, have considered all the evidence is a distinct possibility, given the repeated statement by the Hearing Officer that “the evidence presented no significant additional value”, and that “no evidence was presented at all to address specific issues.”[7] The most significant issue to be decided, whether the Plaintiff took sufficient steps to ascertain the authority of the Foxwoods host to speak on behalf of the patron, was in fact the subject of Plaintiffs testimony but, as noted, it is impossible to know whether this was not found to be credible[8] or, even if worthy of belief, did not satisfy the requirements of the Confidentiality Policy, even as the same is implemented and described by Mr. Athey.[9] For purposes of this ap *151 peal, however, this issue need not be resolved; setting aside the additional evidence, or lack of evidence, produced at the hearing on remand, and looking to the original hearing, the Hearing Officer’s conclusion that the Plaintiff revealed “what the average theoretical win would be”[10] is not based on substantial evidence in the record, nor was there any evidence introduced as to the relationship between the furnishing, apparently in good faith,[11] of information concerning complimentary non-gaming limousines and the effective regulation of gaming.
This Court has repeatedly recognized the deference to be accorded the findings and conclusions of the Hearing Officer before whom the original hearing is conducted. Flexer v. Office of the Director of Regulation, 3 G.D.R. 136, 137, 7 Am. Tribal Law 488 (2008). Nevertheless, it is the obligation of a court reviewing an agency determination to ensure that there exists, in the record, substantial evidence to support such findings:
Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency’s findings of basic fact and whether the conclusions drawn from those facts are reasonable ... Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding ... the decision must be upheld. The obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it.
Kochachy v. Office of the Director of Regulation, 1 G.D.R. 115, 117, 4 Am. Tribal Law 522 (2003), quoting Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. 702, 709, 692 A.2d 834 (1997).
There can be no doubt as to the importance of the Confidentiality Policy which the Defendant seeks to enforce.[12] What is perplexing in the instant case is that the Commission presented no evidence at either the original hearing or the hearing on *152 remand [13] as to just what was revealed to the Foxwoods host other than information about non-gaming limousines, and whether or not the same was in fact done at the request of the patron.[14] As for the information on providing complimentary non-gaming limousines, there was no evidence of any sort linking this disclosure, which may or may not have been at the request of the patron,[15] to the effective regulation of gaming.
As the Tribal—State Gaming Compact provides, and as the Hearing Officer accurately noted in his Conclusions of Law, the gaming license of any employee may be suspended or revoked upon information that would justify denial of such original license or any renewal:
The State gaming agency may deny a gaming employee license to any applicant who:
(i) Has been determined to be a person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chances of unfair or illegal practices, method, and activities in the conduct of the gaming activities permitted hereunder; ...
Tribal—State Gaming Compact, § 5(e).
In the instant case, the decision of the Hearing Officer as to what information was provided by the Plaintiff to the Fox- *153 woods employee, beyond the furnishing of complimentary non-gaming limousines, is not supported by substantial evidence in the record, Kochachy v. Office of the Director of Regulation, 1 G.D.R. 115, 117, 4 Am. Tribal Law 522 (2003).[16]
The conclusion is inescapable that the decision of the Hearing Officer is “[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record,” MTC § 3—224(J), in light of the fact that the record contains virtually no substantial evidence. This is not to say, however, that the Commission has not identified a Confidentiality Policy which, how'ever it may be applied [17] is anything less than essential to the functioning of the Tribal Gaming operation,[18] or established that the same may have been violated. Once again, this case, as it presently stands, fits squarely within Judge Landau’s description of when a remand is appropriate:
Common sense and federal case law indicate that where an agency record is incomplete for one reason or another, a remand to the agency to take additional evidence is the only method by which the court can assure meaningful judicial review.
Gervasoni v. McGrath, 36 Conn.Supp. 297, 301, 418 A.2d 952 (1980).
Accordingly, the matter is remanded to the Hearing Officer for de novo proceedings at which the Commission shall have the burden of establishing by a preponderance of the evidence that revocation or suspension of Plaintiffs gaming license is warranted pursuant to § 5(g) of The Mohegan Tribe—State of Connecticut Gaming Compact or as otherwise provided by law.

. The charge against the Plaintiff was that he revealed confidential information to an executive host at Foxwoods concerning a patron, one Christy Hicks; among the issues in this appeal are the steps the Plaintiff took or did not take to verity that Ms. Hicks had authorized the disclosure and whether the same comported with Department policy. As to just what the Plaintiff did reveal, he admitted only to revealing “that she did receive non gaming limo's” (i.e. complimentary limousine transportation, presumably to non-gaming activities); as to other confidential information, "like a six [month] theoretical” the Plaintiff stated "f would have given him that information uh, and other information regarding to her play,” Transcript at 6.

. The Court will not step into the dispute surrounding the claimed demise of the subjunctive tense in modern English; suffice it to say that the language of Mr. Clute pertaining to the release of information beyond that concerning the limos is expressed conditionally (“would have”); he was never asked if he in fact did release the other information. “[S]ubjunctive”, adj. Of, relating to, or being a mood of a verb used in some languages lor contingent or hypothetical action, action viewed subjectively, or grammatically subordinate statements,” American Heritage Dictionary of the English Language, 4th Ed., (2009).

.The custom has developed in this court to refer to the licensing authority as the Commission (Mohegan Tribal Gaming Commission) and will be continued in this opinion, even though its functions have been taken over by the Office of the Director of Regulation.

. The Court's order provided: "As for the conditions under which such evidence may be taken, in view of the agreement under which the earlier hearing proceeded, the Court recognizes that the Commission would be prejudiced if only the Plaintiff were to be allowed to present additional evidence. Therefore, further proceedings before the agency shall be stayed for a period of fourteen days from the date hereof, during which the Commission may move for leave to present additional evidence.”

. The "Memorandum” which Plaintiff sought to introduce was presented by neither party; Plaintiff’s counsel maintained that "[m]y client was not able to secure—no one would give him a copy. We did attempt—again we did attempt to produce more testimony from [Mr. Athey] with regard to the practices and procedures throughout the department because he was planning on testifying that other people in the department did things exactly the way he did them and that it was allowed by the department, and that testimony was not allowed." Hearing on Plaintiff’s Appeal, July 30, 2009.

.As to how the Plaintiff knew it was the patron, Ms. Hicks, the testimony under cross examination was as follows:
JO: So your testimony is that you could clearly hear over a cell phone Mrs. Hicks in the background?
JC: I under, I knew that it was her voice. I only deal with Christine Hicks on the telephone. Uh, I dealt with her numerous times a week. She's always; she always requests rooms at nighttime. I did recognize her voice on the telephone.
Transcript of Hearing October 30, 2008 at 17.

. Decision on Remand, Summary, at 7.

. If so, such a conclusion should not be disturbed by this Court: "The Court shall not substitute its judgment for that of the Agency as to the weight of the evidence on questions of fact.” MTC § 3-224(j).

. According to Mr. Athey’s testimony at the first hearing, confidential information may be released if:
*151 “Yeah, he's standing in front of us or on the phone, we verity that we are speaking with the customer in some way."
Transcript at 5.
A significant clarification of the apparent inconsistency between the Confidentiality Policy and its implementation as described by Mr. Athey was provided by Commission Counsel at the hearing on this appeal:
Judge: Now, do you stand, or does the Commission stand by the testimony of Mr. Athey as being accurate?
Counsel: Yes, Your Honor
Judge: So that according to his testimony you can release information if the customer is standing in front of you or on the phone and you verify that you are speaking with the customer in some way?
Counsel: Yes.
Hearing on Plaintiff’s Appeal, July 30, 2009.

. Findings of Fact, Paragraph 4. As should be abundantly clear by now, there is no dispute that the Plaintiff provided information as to providing of complimentary non-gaming limousines to the patron.

. No evidence whatsoever was introduced by the Commission that the actions of the Plaintiff were undertaken in bad faith.

. The Court is in agreement with Commission counsel’s argument as to the significance of unauthorized revealing of gaming information concerning patrons.

. Commission counsel is correct that the hearing on remand concerned Plaintiff’s Application for Leave to Present Additional Evidence; however, the burden still remained on the Defendant to ensure that the findings and conclusions of the Hearing Officer were supported by substantial evidence in the record, and the order of this Court allowing the Plaintiff to present additional evidence made it clear that the Defendant would be allowed the same privilege.

. The only evidence of what was revealed came in the midst of the Plaintiff’s apology:
JC: All right. Correct me if I’m wrong, I believe that the date was August 17th, I did receive a call from John Sanders and I was actually in the office checking my email and he called me and told me that he was with a patron, uh, Christy Hicks and they were having dinner and uh, ! do remember the first question that he asked me was information that you know, she was claiming to get, I think non-gaming limo’s to and from the casino every time uh, she went so yeah, he was asking me questions about that and yes, I did.
MB: Let me get the names of the people straight. Ms. Hicks is a patron here?
JC: A patron at Mohegan Sun and Mr. Sanders is a Host over at Foxwoods.
MB: Got you, very good.
JC: Uh, so yes I did verify it, that she did receive non gaming limo's uh, I don’t believe that she gets them every single time that she come but its frequently uh, pretty much any information he asked about Ms. Hick’s I would have given him. I don't remember exact specifics uh, but if he did ask me for like a six [month] theoretical, uh, i would have given him that information uh, and other information regarding to her play. Uh, Mr. yeah that’s pretty much it, Mr. Sanders asked me about Ms. Hick’s and they’re having dinner uh. I do realize that I should not have released that information to him, uh, I am sorry that I did release that information. I don’t, I know that Mr. Sanders has asked me to uh, work at Foxwoods, if I was interested at working over at Foxwoods, uh, 1 don’t have an interest in working over there in Foxwoods and I do not ever intend on releasing any [type] of patron information to Mr. Sanders ever again and for that I am truly sorry that that happened and that I did and I do apologize.
Transcript of Hearing October 17, 2007 at 5-6.

.At the hearing on this Appeal, Commission Counsel argued that the disclosure was not authorized because the Plaintiff never spoke directly to the patron; this avoids the issue by equating the Plaintiff's alleged failure to take adequate steps to verity that the disclosure was at the patron’s request with the disclosure being against the patron’s wishes, a position for which there is no evidence whatsoever in the record.

. Paragraph 4 of the Hearing Officer's Findings of Fact makes it clear that the Hearing Officer found that information concerning the average theoretical win for the patron was in fact provided. While it is quite possible that this did in fact occur, the record provides an insufficient basis for such a determination.

. It now appears that the telephone exception described by Mr. Athey is recognized and approved. See fn. 8.

. This position was well expressed by Commission Counsel at the hearing on this Appeal:
Patrons in general have a right and expectation of confidentiality; that their information that they've shared with us, especially in this day and age of electronic eavesdropping and identity theft, we have not only an obligation but I think we have a very clear legal obligation to provide a certain level of protection for our patrons in that aspect. As far as tribal assets, these people, patrons, form a very large nucleus of our tribal assets. Our patron base is very significant as far as revenue generation. So I think there are two aspects here that must be considered as far as the obligation to the Tribe and the obligation to the patron for the confidentiality aspect of their information, and a protection of the confidentiality. And when that confidentiality is breached in any fashion, I think it has to be looked at with the most severe terms.
Hearing on Appeal, July 30, 2009.